

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 15 PH 4: 33

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PEPERONE'S GOURMET MARKET, INC.                          CIVIL ACTION

versus                                                   NO.  05-0325

NEWTEK SMALL BUSINESS FINANCE, INC.                      SECTION: E/4

### ORDER and REASONS

This matter is before the Court on defendant Newtek Small Business Finance, Inc.'s ("Newtek") motion for summary judgment. Newtek's motion requests dismissal of all claims by plaintiff Peperone's Gourmet Market, Inc. ("Peperone's") against Newtek, and granting all claims set forth in Newtek's Counterclaim against Peperone's, and Third Party Demand against Sharon M. Savage and Kenneth C. Savage, Jr.[1]  Record document #19.  The matter was submitted on the briefs on March 15, 2006.  Neither Pepperone's nor the Savages filed an opposition.

### BACKGROUND

Peperone's is a retail business selling specialty meats and

---

[1]Sharon Savage was president and Kenneth Savage was treasurer of Peperone's.  On March 13, 2006, Sharon and Kenneth Savage filed for Chapter 7 bankruptcy protection, Case No. 06-10169.  Therefore, this Order and Reasons will address only Peperone's Complaint and Newtek's Counterclaim against Peperone's.  Previously, a third officer of the corporation, Emmett S. Dufrene, Jr., filed for Chapter 11 bankruptcy protection, Case No. 05-12674, and was not named in Newtek's Third Party Claim.



Fee_____
Process_____
X/Dktd_____
CtRmDep_____
Doc. No_____

other products. *See generally,* Peperone's Petition for Damages[2],
r.d. #1.   In late October or early November, 2003, Peperone's
contacted Belinda Littlewood, a representative of Newtek, to obtain
an SBA loan for relocation and expansion of the business.
Peperone's began construction at its new location while the parties
engaged in oral discussions regarding the SBA loan.   On November
25, 2003, Newtek issued an approval letter stating that it had
approved Peperone's application for an SBA loan "subject to the
satisfaction of the terms and conditions" set forth in the approval
letter. Newtek memorandum, Ex. A., letter dated November 25, 2003.
The Savages signed the approval letter on behalf of Peperone's
indicating agreement to those terms and conditions.   One of the
conditions imposed was that the loan closing occur no later than
December 31, 2003.

The loan ultimately closed on January 30, 2004, when the
Savages, individually and as principals of Peperone's, signed a
promissory note in the amount of $233,000.00 in favor of Newtek.
Newtek Memorandum, Ex. B.   They also signed two security agreements
(Ex. C) wherein Peperone's pledged its assets, including furniture,
fixtures, equipment, inventory and accounts, to Newtek as security

---

[2]The Petition was filed in state court and was removed to the district
court.

for the loan.  Newtek duly recorded its security interest.  Ex. D.

By April, 2004, and for several following months, Peperone's was late making its monthly payment.  In August, 2004, it requested that Newtek defer its August, September and October payments and schedule its next payment on November 1, 2004.  Exs. I, J.  Newtek granted the deferral (Ex. K), but Peperone's failed to make the November payment.

In January of 2005 Newtek made demand on Peperone's for the following amounts:  principal balance of $231,312.27; interest of $6,226.16 to the date of demand plus interest accrued at a rate of $51.40 per day to payment; late fees of $427.51; miscellaneous fees of $506.04; plus costs and expenses relating to the collection of the promissory note, including attorney's fees.  Ex. L.  In December, 2004, Peperone's filed this lawsuit in state court alleging that Ms. Littlewood's and Newtek's fraudulent oral misrepresentations, breach of the lending agreement and delays in funding the loan caused Peperone's damages.  *See* Petition, ¶¶ XVI-XX.  Newtek counterclaimed against Peperone's to enforce the terms of the Promissory Note.

## ANALYSIS

A motion for summary judgment is properly granted only if

-3-

there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L. Ed. 3d 265 (1986).  An issue is material if its resolution could affect the outcome of the action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  See Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).  However, once a moving party properly supports a motion for summary judgment, the nonmoving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 311-12 (5th Cir. 1999), quoting Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047-48 (5th Cir. 1996).  If the non-moving party bears the burden of proof at trial, "the moving party may demonstrate that it is entitled to summary judgment by submitting ... evidence negating the nonmoving party's claim ...."  Morris v. Covan World Wide Moving, Inc., 114 F.3d 377, 380 (5th Cir. 1998).  The nonmoving party cannot satisfy its burden with "unsubstantiated

-4-

assertions" or "conclusory allegations."   Id.

I.

Peperone's causes of action against Newtek are governed by the Louisiana Credit Agreement Statute ("LCAS"), La. R.S. 6:1121 *et seq.* Jesco Construction Corp. v. NationsBank Corp., 830 So.2d 989, 992 (La. 10/25/02), reh'g denied (12/31/02).  The statute defines a "credit agreement" as "an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation."   La. R.S. 6:1121(1).   Section 1122 provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth relevant terms and conditions, and is signed by the creditor and the debtor."   La. R.S. 6:1122.   The Louisiana Supreme Court has held that La. R.S 6:1122 bars "all actions (or causes of action or theories of recovery) based upon an oral agreement to lend money".   Jesco, 830 So.2d at 992. Additionally, a new credit agreement is not created by oral advise by a creditor to a debtor, or by a creditor's oral agreement to take or not to take certain actions.   La. R.S. 6:1123(A)(1)-(3).

First, Peperone's alleges that it relied, to its detriment, on Ms. Littlewood's oral assertion that Newtek "would have no problem

-5-

doing the loan and that it would take seven to eight days in order to process the loan" (Petition at ¶VI); her assurance on October 29, 2003, "that the loan would be funded in the near future" (*id.* at VII); her representation that Peperone's check for a $2,500 "good faith" deposit would not be negotiated (*id.* at IX); and her repeated assurances that the loan would be funded in early December, 2003 (*id.* at X).   Even assuming the truth of these allegations, each of these claims is based on what, under the LCAS, is an oral agreement to lend money or to make a financial accommodation.   The claims are barred by La. R.S. 6:1122.[3]  <u>Jesco</u>, *id.*; <u>King v. Parish National Bank</u>, 885 So.2d 540, 547 (La. 10/19/04), reh'g denied (11/24/04).

Peperone's next claims that the approval letter dated November 25, 2003, is a "letter contract" which required that Newtek close the loan by December 31, 2003.   It alleges that Newtek's failure to close the loan by that date, and to fund the loan by that date, is a breach of the letter contract.   Under the terms of the approval letter, the December 31, 2003, closing date was contingent upon Peperone's fulfillment of a series of conditions set out in the

---

[3]The Court observes that several of the closing documents signed by Peperone's and the Savages, including the Promissory Note (Ex. B, §9E), contain language stating that oral statements by the Lender or the SBA cannot be used to contradict or modify the written terms of the signed documents.

letter.  Newtek produced the affidavit of Jeffery T. Ferentchak, a liquidation officer for Newtek who handled Peperone's account.  Ex. M.  He testified that Peperone's check for the $2,500 "good faith deposit" was returned "NSF"; that Peperone's failed to provide evidence of its required equity injection until January 4, 2004; that it did not provide Newtek with the required closing financial statement; that it did not provide the required signed copy of its lease until after January 26.  Peperone's has not offered any evidence to contradict Mr. Ferentchak's testimony.  Newtek did not breach the terms of the approval letter when it failed to close the loan by December 31, 2003, because Peperone's had not timely complied with the terms and conditions set out in the letter.

Newtek is entitled to summary judgment dismissing Peperone's claims against it.

II.

Under Louisiana law, a negotiable instrument (a) must be signed by the maker or drawer; (b) must contain an unconditional promise to pay a sum certain in money; (c) be payable on demand or at a certain time; and (d) be payable to order or to bearer.  La. R.S. 10:3-104.  When signatures on an instrument are admitted or established, production of the instrument entitles a holder to

recover on it unless a defendant establishes a defense. La. R.S. 10:3-308(b). Unless specifically denied in the pleadings, each signature on an instrument is admitted. La. R.S. 10:3-308(a). A "holder" is a person who is in possession of an instrument drawn or issued to him or to his order. La. R.S. 10:1-201(20).

The promissory note signed by the Savages on behalf of Peperone's is a negotiable instrument payable to Newtek. They have not denied that they signed the promissory note as agents of Peperone's. In addition, Peperone's, through its agents and officers, executed two Security Agreements in favor of Newtek. Ex. C. The undisputed language in these documents entitles Newtek to certain rights and remedies upon Peperone's default on the Promissory Note. Newtek is entitled to accelerate the entire indebtedness making it immediately due and payable, and it may seize and sell the collateral pledged to secure the debt under ordinary or executory process.

Newtek is entitled to judgment in its favor on its Counterclaim against Peperone's.

Accordingly,

**IT IS ORDERED** that Newtek's motion for summary judgment dismissing Peperone's claims against it is **GRANTED;** and

**IT IS FURTHER ORDERED** that Newtek's motion for summary judgment on its Counterclaim against Peperone's to enforce the Promissory Note is **GRANTED**.

**IT IS FURTHER ORDERED** that Newtek's Third Party Claim against Sharon M. Savage and Kenneth C. Savage, Jr., **BE AND IS HEREBY STAYED PENDING BANKRUPTCY PROCEEDINGS IN THE EASTERN DISTRICT OF LOUISIANA, CASE NO. 06-10169.**

New Orleans, Louisiana, this __15__ day of March, 2006.

_____
**MARCEL LIVAUDAIS, JR.**
**Senior United States District Judge**